UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────

No 05-CV-1783 (JFB) (MDG)

───────────────

YIN WANG AND YAP SHING CHAN,

Plaintiffs,

VERSUS

YUM! BRANDS, INC., AND KFC RESTAURANT,

Defendants.

───────────────

Memorandum and Order
February 14, 2008

───────────────

JOSEPH F. BIANCO, District Judge:

Plaintiffs Yin Wang ("Wang") and her husband, Yap Shing Chan ("Chan") (collectively, "plaintiffs"), bring this negligence action against defendants Yum! Brands, Inc., and KFC U.S. Properties, Inc. (collectively, "defendants"), seeking to recover damages for injuries allegedly arising from Wang's slip and fall in a restaurant owned by defendants.

Trial commenced on January 7, 2008 and a mistrial was declared on January 14, 2008 because the jury was unable to reach a verdict. Defendants have renewed their motion, pursuant to Rule 50 of the Federal Rules of Civil Procedure, for judgment as a matter of law in their favor because plaintiffs failed to present sufficient medical evidence of causation or injury to support an award in their favor. For the reasons that follow, defendants' motion is denied.

I. BACKGROUND

A. Procedural History

Plaintiffs filed the complaint in this action on March 1, 2005, in the Supreme Court of the State of New York, Queens County. Defendants removed the case to this Court on diversity grounds on April 8, 2005. The case was reassigned to the undersigned on February 10, 2006. Following the completion of discovery, the parties filed cross-motions for summary judgment. On May 22, 2007, the Court denied defendants' motion as to plaintiffs' negligence and loss of consortium claims, but granted defendants' motion on the issue of lost wages, and precluded plaintiffs from offering

evidence on the issue of Wang's lost wages. Plaintiffs' cross-motion for summary judgment was denied in its entirety.

### B. The Trial

The trial commenced on January 7, 2008. During plaintiffs' case, Wang testified regarding the circumstances surrounding her fall in the KFC on October 15, 2004 and the injuries she sustained. Chan, who is Wang's spouse, testified to the facts related to his loss of consortium claim. Plaintiffs also called an expert, Vijaykumar Kulkarni, M.D., FACS ("Dr. Kulkarni"), to testify regarding causation and the extent of Wang's injuries. At the conclusion of plaintiffs' case, defendants moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. Pursuant to Rule 50(b), the Court stated that it was reserving decision on the legal questions raised by the motion and was submitting the claims to the jury. Defendants presented three witnesses – namely, two KFC employees who were present in the store that day and a medical expert to rebut the testimony of plaintiffs' expert. On January 14, 2008, after the jury reported for the second time that it was unable to reach a verdict, the Court declared a mistrial. On January 23, 2008, defendants submitted a letter renewing their motion for judgment as a matter of law. On February 4, 2008, plaintiffs filed their opposition. The Court has fully considered the submissions of both parties.

### II. STANDARD OF REVIEW

The standard governing motions for judgment as a matter of law (formerly described as motions for directed verdict) pursuant to Rule 50 is well-settled.[1] Judgment as a matter of law may not properly be granted under Rule 50 against a party "unless the evidence, viewed in the light most favorable to the nonmoving party, is insufficient to permit a reasonable juror to find in his favor." *Arlio v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007) (citing *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)). In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, and it "may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) (quoting *Galdieri-Ambrosini*, 136 F.3d at 289). Thus, judgment as a matter of law should not be granted unless

> (1) [T]here is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or
> (2) [T]here is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

---

[1] Rule 50(a)(1) provides: "(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:(A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).

2

*Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004) (quoting *Galdieri-Ambrosini*, 136 F.3d at 289) (internal citations omitted).

### III. DISCUSSION

Defendants argue that they are entitled to judgment as a matter of law because there was no evidentiary basis upon which the jury could find causation or damages against defendants based on the expert testimony offered by plaintiffs at trial. Specifically, defendants contend as follows:

> [T]here is no dispute that the plaintiff attorney did not submit **any** medical records into evidence at trial. Also, the plaintiff herself was unable to state, without refreshing her recollection, any hospital or medical facility in which she [was] treated, or even how the accident happened. The plaintiff's expert report from Dr. Kulkarni was marked at the trial . . . . By his own report, Dr. Kulkarni was not a treating physician. He saw the plaintiff one time, almost two years after the accident. His opinion was based upon uncertified medical records, and a conversation he had with the plaintiff through an unidentified translator provided by the plaintiff attorney. As such, it is submitted that his testimony was insufficient to establish a causal link between the injuries alleged, and the incident in question.

(Defs.' Letter, dated January 23, 2008, at 1.) As set forth below, the Court concludes that defendants are not entitled to judgment as a matter of law under Rule 50.[2]

In the instant case, as stated in a written report, plaintiffs' expert, Dr. Kulkarni, reached his conclusions regarding the cause and extent of Wang's injuries based on, among other things, the following: (1) a review of emergency room records from the date of the accident that is the subject of this litigation; (2) a review of office records of Dr. June Yin, Dr. Fong Lu, Dr. Yan Sun, and Flushing Neurology Consultants, where Wang had been examined and treated since the accident; (3) a review of MRIs from Central Queens Imaging in 2005; and (4) a physical examination of Wang conducted by Dr. Kulkarni on September 21, 2006, which included taking a verbal medical history from plaintiff with the assistance of an unidentified translator. Based upon the review of records and physical examination of Wang, Dr. Kulkarni diagnosed her with the following injuries: (1) "status post sprain/strain injury to the cervical spine with focal central disc herniation C5-6 and Grade I retrolisthesis C5-6 with residual fibromyositis with loss of range of motion"; (2) "status post contusion to the left elbow with lateral epicondylitis"; and (3) "status post sprain/strain injury to the lumber spine with disc desiccation and concomitant bulging and posterior central disc herniation L4-5, L5-S1 with mild to moderate spinal canal stenosis and narrowing of the inferior

---

[2] Because defendants appear to be simultaneously challenging the medical evidence on admissibility grounds under the Federal Rules of Evidence and arguing in the alternative that such evidence (even if admissible) is insufficient to support a finding of liability or damages under New York law, the Court has cited to both federal and New York cases in its analysis below.

aspect of the neural foramina bilaterally with residual fibromyositis and loss of range of motion." (Dr. Kulkarni's Report, at 4.) Dr. Kulkarni further concluded that it is "medically probable" that the accident on October 15, 2004 at KFC was the "direct causal event" for Wang's injuries. (*Id.* at 4.)

Although defendants contend that they are entitled to judgment as a matter of law because of purported deficiencies in Dr. Kulkarni's examination and review of records, the Court disagrees. At trial, Wang testified in detail regarding the circumstances surrounding the events at the KFC on October 15, 2004, as well as the injuries and pain Wang contends that she experienced following the accident. Moreover, even though neither the report nor underlying medical records were introduced as evidence, Dr. Kulkarni testified at trial as to the conclusions he reached from his review of the medical records and physical examination, and such testimony was generally consistent with the details contained in his expert report, which are referenced above. Based on Wang's testimony and Dr. Kulkarni's testimony, there was a sufficient basis for the jury to find that a physical injury occurred by Wang and was caused by the accident on October 15, 2004, and thereby award some level of damages to Wang.

The various deficiencies in Wang's medical proof outlined by defendants do not entitle them to judgment as a matter of law because such deficiencies go to the relative weight to give such evidence, but do not render such proof inadmissible and did not preclude a jury from finding causation and awarding some level of damages based on such evidence if they had found in favor of plaintiffs.

First, defendants complain that no medical records were introduced into evidence at trial. However, the failure to introduce medical records into evidence does not mean that Dr. Kulkarni could not state his medical opinion based on a review of such records, and the jury is permitted to credit and rely upon such conclusions, if it wishes to. Moreover, the fact that the underlying medical records were not certified and may not have been independently admissible (if plaintiff had sought to admit them) does not preclude Dr. Kulkarni from giving his expert opinion based, in part, on review of such records. In particular, Rule 703 of the Federal Rules of Evidence specifically addresses this situation and provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

(Fed. R. Evid. 703.) Here, as stated on the record during trial, Dr. Kulkarni's testimony was admissible under Rule 703. Specifically, he was permitted to give his expert testimony regarding causation and injury because the facts and data he utilized – namely, review of Wang's prior medical reports and his physical examination of Wang – are

reasonably relied upon by experts in the medical field to reach such a conclusion. *See, e.g., Carroll v. Morgan,* 17 F.3d 787, 790 (5th Cir. 1994) (holding that doctor was qualified under *Daubert* to give an expert opinion as to causation based on his review of, among other things, plaintiff's medical records and the coroner's records, and on a broad spectrum of published materials); *Hopkins v. Dow Corning Corp.,* 33 F.3d 1116, 1125 (9th Cir. 1994) (holding that district court properly admitted expert testimony under *Daubert* based on "medical records, his clinical experience, preliminary results of an epidemiological study and medical literature"); *Landeros v. Barbieri,* No. 96 Civ. 7809 (RLE) (LAK), 1998 WL 28067, at *3 (S.D.N.Y. Jan. 27, 1993) ("Defendant further objects to [the doctor] basing his opinion upon a brief interview, review of plaintiff's medical and psychiatric records, and a number of logical inferences. These points are not lost on the court. However, any doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.") (quotations and citations omitted); *see also Easley v. City of New York,* 189 A.D.2d 599, 599 (N.Y. App. Div. 1993) ("An expert witness is not precluded from stating his medical opinion where he has examined the injured party and a review of the record supports his conclusion."); *Natale v. Niagara Mohawk Power Corp.,* 135 A.D.2d 955, 956-57 (N.Y. App. Div. 1987) (holding that plaintiff's experts could testify about causation and "the weight to be accorded this evidence was properly left to the jury to decide" where "[t]heir conclusions were based on the emergency room sheet, discussions with the doctor and nurses at the hospital, and a review of plaintiff's pretrial deposition" and they did not examine plaintiff).

Second, defendants' related contention, that Dr. Kulkarni's conclusions are undermined by the fact that he used an unidentified translator to orally obtain Wang's medical history and other information during his physical examination, is similarly unavailing to the extent defendants seek to use such fact as a basis to obtain a judgment as a matter of law. Although the use of a translator could potentially affect the admissibility of any statements by Wang to Dr. Kulkarni, the use of translator does not prevent him from testifying concerning his opinions and does not render his opinions so unreliable that they cannot be relied upon by a jury. The oral medical history was not the only item relied upon by Dr. Kulkarni; rather, he also obtained Wang's prior medical history from his review of various reports by doctors who had treated her over the years. Therefore, under such circumstances, the use of a translator to speak with plaintiff during the physical examination goes to the weight of Dr. Kulkarni's opinions, not their admissibility. This precise issue was raised in *Ross v. Salminen,* 191 F. 504 (1st Cir. 1911), and rejected by the First Circuit. Specifically, the court found that the doctor's testimony was admissible:

> The only other question we need consider is the objection to the testimony of the physician as to the sufferings of the plaintiff. It seems that the plaintiff did not speak the English language, and the physician did not understand her language. The physician testified that he examined the plaintiff through an interpreter, and that no other person was present, and that his examination consisted of questioning her about the diseases in her family, her previous health, her account of her injury, and all the pains from the time of the injury, and

5

that he also made a physical diagnosis. He further testified that his opinion was based partly upon the story given him by the interpreter, and partly upon the diagnosis made by him. This was seasonably objected to, unless the plaintiff intended to produce the interpreter in court, and thus make complete connection with what occurred. It appears that the interpreter was in New York, and could not be produced. Thereupon the defendant's objection to the testimony was overruled, and he seasonably excepted. This, however, is the only sensible and practicable way of introducing a conversation conducted through an interpreter under circumstances of this character; and the practice is in favor of its admission.

*Id.* at 505; *see also United States v. Santana,* 503 F.2d 710, 717 (2d Cir. 1974) (affirming admission of co-conspirator statements that occurred through a non-testifying interpreter). Counsel for defendants established during his cross-examination that a translator was used and that Dr. Kulkarni could not attest to the accuracy of such translation. Therefore, the jury was fully capable of assessing how the use of an unidentified translator should impact the credibility of Dr. Kulkarni and the weight to be given to his testimony. However, the use of the translator does not make his testimony unreliable as a matter of law such that no jury could rely upon it.

Finally, the fact that Dr. Kulkarni was not Wang's treating physician and examined Wang almost two years after the accident also does not preclude the jury from relying on such testimony. These issues go to the weight, not the admissibility of his testimony, and the jury was properly permitted to consider his testimony on the issues of causation and damages. *See, e.g., Ezra v. Life Ins. Co. of N. Am.,* 298 A.D.2d 267, 267 (N.Y. App. Div. 2002) ("[T]he facts that defendant's first expert did not examine plaintiff's medical records until August, 1999, and that defendant's second expert did not examine plaintiff until April, 2001, do not entitle plaintiff to summary judgment"); *Bitici v. N.Y. City Transit Auth.,* 245 A.D.2d 157, 157 (N.Y. App. Div. 1997) (holding that even though no medical problem was found with plaintiff until two and a half years after the accident "[i]t is within the province of the fact finder, not the summary judgment court, to determine the weight to be given to the examination and findings of plaintiff's doctor"); *Cassagnol v. Williamsburg Plaza Taxi Inc.,* 234 A.D.2d 208, 209 (N.Y. App. Div. 1996) ("While one might properly question the weight to be accorded to an examination conducted by defendants' doctor two years and nine months after the accident, that ultimately is an issue for the finder of fact."); *Weigert v. Baker,* 217 A.D.2d 1011, 1011 (N.Y. App. Div. 1995) ("The fact that [the doctor] was not plaintiff's treating physician and had not examined plaintiff's x-ray or MRI films as further diagnostic tools goes only to the weight of the testimony, not to its admissibility.").

In sum, the Court recognizes that, during the course of the trial, counsel for defendants submitted evidence that undermined various aspects of the testimony of Dr. Kulkarni and Wang regarding causation and damages. However, on a Rule 50 motion, the Court must view the evidence in the light most favorable to the nonmoving party and determine whether the evidence is insufficient to permit a reasonable juror to find in her favor. Under that standard, defendants' Rule 50 motion cannot prevail.

Specifically, when the evidence is viewed in the light most favorable to plaintiffs, the jury could find in favor of plaintiffs on the issue of liability and award some measure of damages based upon the evidence submitted at trial regarding injury. Accordingly, defendants' motion is denied.

IV. CONCLUSION

For the reasons stated above, defendants' motion for judgment as a matter of law pursuant to Rule 50 is DENIED.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 14, 2008
Central Islip, New York

\* \* \*

The attorney for plaintiffs is Feng Li, Esq., 1719 Route 10 East, Suite 111, Parsippany, New Jersey 07054. The attorney for defendants is Andrew J. Funk, Esq., Smith Mazure Director Wilkins Young & Yagerman, P.C., 111 John Street, New York, New York 10038-3198.